UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA FACKLER,

          CIVIL ACTION NO. 06-10466

    Plaintiff,          District Judge Bernard A. Friedman

v.          Magistrate Judge Virginia M. Morgan

RHODA DILLARD,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

Plaintiff is an inmate at the Robert Scott Correctional Facility, a Michigan Department of Corrections (MDOC) facility located in Plymouth, Michigan. She filed a 42 U.S.C. § 1983 action against defendant Rhoda Dillard, a corrections officer at the Robert Scott facility, alleging violations of her Eighth Amendment right to be free of cruel and unusual punishment and her Fourteenth Amendment right to equal protection of the laws. The matter comes before the court on defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the court recommends that the motion be **GRANTED**.

**II. Background**

The allegations set forth in the complaint, which must be taken as true for the purpose of

this motion, are as follows.[1] On the morning of January 6, 2004, defendant was working in the prison's "upper segregation" unit, where plaintiff was housed at the time. The incident that gave rise to this cause of action occurred as defendant was retrieving the inmates' breakfast trays. Prior to the delivery of the trays, plaintiff observed defendant go into the staff restroom with a four-ounce juice cup and emerge from the restroom with the cup in her hands, and with her pants undone. Defendant then placed the cup on the bottom of the food cart and proceeding to deliver the breakfast trays. Following the delivery of a tray to plaintiff, the food slot in her cell door was left open. After the inmates finished their meals, defendant began collecting the trays. When defendant reached plaintiff's cell, defendant took the four-ounce cup off the food cart and threw its contents through the food slot. The cup contained urine, which splashed onto plaintiff's face and shirt.

Plaintiff alleges that the urine-throwing incident was part of a larger pattern of harassment by defendant and that defendant's actions violated her Eighth Amendment right to be free of cruel and unusual punishment. Further, construing plaintiff's pro se complaint broadly, she also appears to allege that such harassment was motivated by racial animus and that defendant thus violated her Fourteenth Amendment right to equal protection of the laws. Defendant contends in her motion to dismiss that plaintiff's complaint contains no claims on which relief may be granted and that she is entitled to qualified immunity.

### III. Discussion

---

[1] "On a Fed. R. Civ. P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true[.]" Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).

### A. Motion to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether, "as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). For the purpose of such a motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's allegations as true. Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998). If more than one inference may be drawn from an allegation, the allegation must be construed in favor of the plaintiff. Id. Further, "the allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a *pro se* complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991). Dismissal under Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Bloch, 156 F.3d at 677.

### B. Equal Protection

The Equal Protection Clause of the United States Constitution provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is, in essence, "a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 341 (6th

Cir. 1983).

It is not entirely clear from a reading of plaintiff's complaint that she even intended to state an Equal Protection claim. The sole allegation that could arguably give rise to such a claim is the following: "Officer Dillard is African American and Ms. Fackler is Caucasian, which makes the conflict even stronger." Plaintiff's Complaint, p. 6. The complaint is otherwise devoid of any allegations that race played a factor in defendant's alleged mistreatment of plaintiff.

Plaintiff's vague allegation is insufficient to state an Equal Protection claim on which relief may be granted. Plaintiff does not allege that defendant treated her differently from other similarly situated inmates based upon her race or that defendant's actions were otherwise motivated by racial animus, and she alleges no facts to support a claim of racial discrimination. Plaintiff merely alleges that the ongoing tension between her and defendant was heightened due to the fact that they are of different races. Such an allegation, standing alone, cannot form the basis for an actionable Equal Protection claim.

### C.  Cruel and Unusual Punishment

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). In its prohibition of cruel and unusual punishment, the Eight Amendment imposes a duty upon prison officials to, among other things, refrain from using excessive physical force upon inmates. Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to establish an Eight Amendment

violation, the plaintiff must plead and prove that prison officials subjected her to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "What is necessary to establish and 'unnecessary and wanton infliction of pain'...varies according to the nature of the alleged constitutional violation." Hudson v. McMillan, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 995 (1992). In the context of an excessive force claim, the question of whether the action taken resulted in an unnecessary and wanton infliction of pain turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously for the very purpose of causing harm." Id., 504 U.S. at 6, 112 S.Ct. 995, 117 L.Ed.2d 995 (citations and quotations omitted). Further, "the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. 504 U.S. at 9, 112 S.Ct. 995, 117 L.Ed.2d 995 (citations and quotations omitted).

Throwing a small (allegedly four ounce) cup of urine through an inmate's food slot resulting in urine splashing on the inmate undoubtedly constitutes a *de minimis* use of force. See, e.g., Jackson v. Culbertson, 984 F.2d 699 (5th Cir. 1993)(Spraying of inmate with fire extinguisher a *de minimis* use of physical force); Ekpin v. Bell, 2004 WL 1515562 (N.D.Tex. 2004)(Pouring of water on inmate's head and back a *de minimis* use of force). Further, while such conduct by a prison guard would be wholly improper and devoid of any legitimate penological purpose, it "is not of a sort repugnant to the conscience of mankind." Id. Plaintiff does not allege that she sought medical attention as a result of the incident or that she suffered any lingering injuries. Rather, she merely alleges that she suffered the indignity of having urine

splashed on her face and on her clothing. To be sure, having even a small amount of urine thrown in one's face or on one's person would be an unpleasant and humiliating experience. However, in the court's view, defendant's conduct was not so grievous as to rise to the level of an Eighth Amendment violation.

Further, even if the court is incorrect its view that defendant's actions were not repugnant to the conscience of mankind, defendant would nonetheless be entitled to qualified immunity. In determining whether a defendant accused of a constitutional violation is entitled qualified immunity, the first question that must be answered is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the facts alleged demonstrate that a constitutional violation occurred, the court must then determine whether the right in question was clearly established. Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id., 533 U.S. at 202, 121 S.Ct. 2151, 150 L.Ed.2d 272. Further, as the Supreme Court has cautioned, "[t]his inquiry...must be undertaken in light of the specific context of the case, not as a broad general proposition." Id., 533 U.S. at 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 .

With respect to the first prong of the qualified immunity analysis, as discussed above, the court finds that the alleged misconduct in this matter does not rise to the level of an Eighth Amendment violation. However, even if that conduct was deemed to constitute cruel and unusual punishment, defendant would be entitled to qualified immunity under the second prong of the immunity analysis. Not surprisingly, the court has found no case involving a guard

6

dousing an inmate with urine. However, that does not end the court's inquiry because the second prong of the qualified immunity analysis does not require that there be case law involving the exact same factual scenario as the case under scrutiny. On a more general level, the court has found no case in which the use of physical force involving minimal or no injuries and no actual contact between the prison guard and the inmate has been found to constitute cruel and unusual punishment in violation of the Eighth Amendment. To the contrary, the courts that have been faced with similar factual scenarios have found that no constitutional violation occurred. See DeMallory v. Cullen, 855 F.2d 442, 444 (7th Cir. 1988)(Spitting on inmate); Jackson, supra, 984 F.2d at 700 (Spraying of inmate with fire extinguisher); Ekpin, supra, 2004 WL 1515562 (Pouring of water on inmate's head and back); Calabria v. Dubois, 23 F.3d 394 (Table), 1994 WL 209938 (1st Cir.(Mass)(Throwing of belt, striking inmate in face resulting in bloody lip); Paldo v. Weston, 2003 WL 22227866 (N.D.Tex 2003)(Spraying of inmate with chemical substance); Frazier v. Mitchell, 75 Fed.Appx., 2003 WL 22176891 (6th Cir.(Mich.))(Spraying of chemical substance into plaintiff's eye). Accordingly, while any reasonable prison guard should recognize that throwing urine at an inmate for no legitimate penological purpose, if there could even be one, is reprehensible, it would not be clear to a reasonable prison guard that throwing a small cup of urine through an inmate's food slot, resulting in the inmate being splashed with urine, would constitute a violation of the inmate's Eighth Amendment right to be free of cruel and unusual punishment. Accordingly, the court finds that defendant is entitled to qualified immunity with respect to plaintiff's Eighth Amendment claim.

To the extent plaintiff claims that defendant's alleged wider pattern of harassment constitutes cruel and unusual punishment, she has failed to state a claim on which relief may be

7

granted.  Plaintiff's complaint contains no specific allegations as to what the harassment consisted of and no allegations that might otherwise make out an Eighth Amendment claim.

### IV.  Conclusion

For the reasons stated above, the court finds that plaintiff has failed to state a claim on which relief may be granted under either the Eight or Fourteenth Amendment, and that even if she had stated an actionable Eighth Amendment claim, defendant would be entitled to qualified immunity as to such a claim.  Accordingly, the court recommends that defendant's motion to dismiss be **GRANTED** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                          s/Virginia M. Morgan  
                                          VIRGINIA M. MORGAN  
                                          UNITED STATES MAGISTRATE JUDGE

Dated:   July 7, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon Rebecca Fackler and counsel of record via the Court's ECF System and/or U. S. Mail on July 7, 2006.

                                          s/Jennifer Hernandez  
                                          Case Manager to  
                                          Magistrate Judge Virginia M. Morgan